734 So.2d 136 (1999)
PROVINCIAL HOTELS, INC.
v.
Stanley I. MASCAIR, Cecilia J. Guyton and American Zurich Insurance Company.
No. 98-CA-2420.
Court of Appeal of Louisiana, Fourth Circuit.
April 21, 1999.
Rehearing Denied July 15, 1999.
John E. Seago, Waguespack, Seago & Carmichael, Baton Rouge, LA, Attorney for Plaintiff/Appellant.
Gregory J. McDonald, Bienvenu, Foster, Ryan & O'Bannon, New Orleans, LA, Attorney for Defendant/Appellee.
G. Patrick Hand, III, The Hand Law Firm, Gretna, LA, Attorney for Defendant/Appellee.
Court composed of Judge MOON LANDRIEU, Judge JAMES F. McKAY III, Judge Pro Tempore JAMES A. GRAY, II.
*137 JAMES A. GRAY, II, Judge Pro Tem.
The plaintiff, Provincial Hotels, Inc., appeals the trial court's judgment in favor of the defendants, Stanley Mascair, Cecilia Guyton, and American Zurich Insurance Company [hereinafter "Zurich"], in this civil action seeking damages and insurance benefits as a result of the alleged embezzlement of plaintiff's funds by its former employees, Mascair and Guyton. We affirm.

FACTS
The Provincial Hotel is owned by three siblings, Bryan Dupepe, Sr., F. Clancy Dupepe, and Verna Dupepe Devlin. Stanley Mascair was hired by the Provincial in 1972 and was made general manager of the hotel in 1985. When Mascair took over the position of general manager, he named Cecilia Guyton as assistant manager.
In January 1992, the owners of the hotel became dissatisfied with its management and decided to terminate Mascair and Guyton. At a meeting held on January 28, 1992, Mascair was informed of his dismissal. According to the three owners of the hotel, Mascair confessed to them and to their accountant, Ben Eriksen, at this meeting, that he (Mascair) had embezzled money from the hotel during his term as manager, and that the sum of $110,000 was still owed by him to the hotel as a result of his dishonesty.
After Mascair's confession, Provincial made a claim against its commercial liability insurer, Zurich, which had provided Provincial with crime coverage. When no progress was made towards settlement of the claim, Provincial filed the instant lawsuit on January 26, 1993.

PROCEDURAL HISTORY
The matter was tried on September 25 and October 1, 1997. At the conclusion of the plaintiff's case, each of the three defendants moved for a directed verdict of dismissal. The trial judge granted defendant Cecilia Guyton's motion, dismissing her from the case. The remaining defendants submitted their case after introducing only one witness. On November 4, 1997, the trial judge rendered judgment in favor of the defendants and issued extensive written reasons. In the reasons for judgment, the trial judge concluded that there was no evidence of embezzlement or theft of funds by Provincial employees other than the Mascair confession, which she found insufficient to meet the plaintiffs burden of proof. As to Zurich, the trial judge concluded that there was "absolutely no proof" that any theft, embezzlement of concealment thereof had occurred during the period of Zurich's coverage.
The plaintiff now appeals, contending that the trial court erred in granting the directed verdict in favor of Cecilia Guyton and in finding that the plaintiff failed to meet its burden of proof with regard to the remaining defendants, Mascair and Zurich.

STANDARD OF REVIEW
The appropriate standard of review is manifest error. Stobart v. State, Through Dept. of Transp. & Dev., 617 So.2d 880 (La.1993). After reviewing the record, we conclude that the judgment dismissing the plaintiffs claims against all three defendants is not manifestly erroneous. We will discuss each defendant separately.

MASCAIR
The plaintiff argues on appeal that the trial court applied an improper standard in determining that Mascair's liability could not be established solely on the basis of the Provincial owners' testimony regarding his "confession." The plaintiff's contention is that the trial court improperly relied upon criminal case law for the proposition that there can be no judgment for the plaintiff absent proof of the corpus delicti, which may not be established solely on the basis of extra judicial declarations or admissions, without more. We find no merit in this argument.
The trial judge specifically stated in her written reasons that she was citing criminal law because of the "dearth" of civil authority on this issue. Moreover, *138 she did not hold the plaintiff to a criminal (beyond a reasonable doubt) burden of proof, but rather analogized to criminal case law to find that the plaintiff failed to prove its case by a preponderance of the evidence. In a civil case, an admission against interest, such as Mascair's confession, while admissible to show fault, is not conclusive. Sutherland v. Board of Commissioners, 459 So.2d 1282, 1285 (La.App. 1st Cir.1984). Moreover, the trial court was free to accord as much or as little weight as it deemed appropriate to the testimony of the Provincial owners regarding Mascair's confession, a classic credibility determination.
The record in the instant case supports the trial judge's conclusion. The witnesses presented by the plaintiff included: the three owners of the Provincial, their accountant Eriksen, one owner's son, two former night "auditors" or night clerks of the hotel, and Guyton. The first four witnesses primarily testified regarding Mascair's statements to them confessing he had stolen money during his tenure as general manager of the hotel and had not yet replaced all he had taken. The two night clerks testified as to "suspicious" activity of Mascair. There were no specific statements or records introduced showing exact amounts taken or the times when these acts occurred. There was never any audit of the hotel's books, ostensibly because it was cost prohibitive. Mascair took the Fifth Amendment at his deposition, and it was stipulated that he would also do so at trial.
Provincial contends that Mascair was embezzling hotel funds primarily by using the American Express account and the vault account at the Whitney Bank. The evidence showed that the Provincial Hotel consistently sustained annual operating losses ranging from $86,000 to $500,000 in the years 1989 through 1991. The owners were aware of these losses because they had to provide additional capital to run the business. The financial records of the hotel were admittedly in disarray. According to the testimony of Provincial's own accountant, Ben Eriksen, the financial records were "unreliable."
The testimony of the hotel owners confirmed that the bookkeeping and accounting procedures were unusual because they were renting nearby condominium units owned by others through Provincial as extra hotel rooms, which Verna Devlin admitted was illegal. To conceal this activity, the condominium owners were paid out of the Whitney vault account, which was a small account requiring only one signature, set up to supply change to the hotel front desk and restaurant. In addition, advance deposit checks received from hotel guests were often held for up to a month before being deposited.
Although the plaintiff claimed Mascair was using the Whitney account to wrongfully convert funds, Provincial introduced no cancelled checks or bank records (other than two monthly bank statements) from the Whitney, nor did any Whitney employee testify. The plaintiff proffered a series of allegedly improper checks made out to a former hotel employee who allegedly served as Mascair's "runner" to place gambling bets, but failed to produce or call the employee to verify them.
With regard to the American Express account, the plaintiff showed only that the charges to and payments from American Express were "out of balance" for certain months. There was no further attempt to prove that the imbalance was caused by dishonest acts of Mascair, or to rule out other, legitimate explanations for the imbalance, such as a hold on payments. No one from American Express was called to testify. Moreover, although the endorsements and deposit information on the American Express checks would be the best evidence of their disposition, no such checks were introduced.
In view of the lack of definitive evidence, the trial judge merely stated the obvious: that there can be no recovery absent proof of what was lost or when. *139 We therefore cannot say that the trial court committed manifest error in determining that the plaintiff failed to meet its burden of proof concerning Mascair.

ZURICH
Zurich provided crime coverage to Provincial under two policies (identical except for coverage limits), which were in effect from 3/12/90 to 3/12/91 and 3/12/91 to 3/12/92, respectively. A clause entitled "Loss Sustained During Prior Insurance" effectively extended the coverage under the first policy back to April 1, 1989. Each policy covers only direct loss sustained as a result of acts committed or events occurring during the policy period, provided the loss is discovered no later than one year from the end of the policy period. Each crime policy is divided into three parts: (A) Employee Dishonesty; (B) Forgery or Alteration; and (C) Theft, Disappearance and Destruction.
The applicable section is "Employee Dishonesty." It provides, in pertinent part:
3.a."Employee Dishonesty" ...means only dishonest acts committed by an "employee", whether identified or not, acting alone or in collusion with other persons... with the manifest intent to:
(1) Cause you [Provincial] to sustain loss; and also
(2) Obtain financial benefit (other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment) for:
(a) The "employee"; or
(b) Any person or organization intended by the "employee" to receive that benefit.
The amount of coverage is limited to $25,000 under the first policy and $100,000 under the second policy.
To recover from Zurich, Provincial had the burden of proving not only that dishonest acts were perpetrated by an employee during the policy period, but also the amount of the loss directly caused by these dishonest acts. After reviewing the evidence, we agree with the trial judge that Provincial failed to meet its burden.
There was absolutely no proof that the alleged dishonest acts occurred during the policy period or the exact amount of the loss attributable to employee dishonesty during that period. In its petition, filed in January, 1993, Provincial alleged Mascair had been converting funds for over five years. However, in the claim originally made to Zurich, Provincial asserted that Mascair's illegal activities stopped in 1990.
With regard to a specific amount, the only proof that Mascair stole $110,000 is the owners' testimony that he confessed to taking this much at the time of his dismissal. Not only is the testimony of the three hotel owners self-serving, but they each differed somewhat in their accounts of what Mascair said to them. In contrast to their testimony, Guyton testified that Mascair told her $70,000 was missing. In the absence of Mascair's own testimony or any definitive proof, the trial judge was justified in finding that the plaintiff failed to establish Zurich's liability.
We therefore find no manifest error in the judgment in favor of Zurich.

GUYTON
The record supports the trial court's conclusion, after the presentation of the plaintiffs case, that there was no evidence to show that Cecilia Guyton participated in any theft, embezzlement or concealment of such by Stanley Mascair. Guyton testified that she did not steal from Provincial, nor was she aware that Mascair had done so. She testified that when he was dismissed in 1992, Mascair told her that $70,000 was missing from the hotel and the owners had blamed him for it. Guyton also testified that in 1990, she loaned Mascair $10,000 to replace what he told her were "missing" funds. Guyton admitted that she was romantically involved *140 with Mascair during the time they worked together at the hotel.
The plaintiff introduced no evidence to controvert Guyton's testimony, other than the testimony of the Provincial owners that Guyton had a close personal relationship with Mascair and therefore "must have known" that he was stealing from the hotel. Provincial produced no checks or financial records that were either forged, altered, or improperly endorsed by Guyton.
Considering this evidence, we cannot say that the trial judge's decision to grant a directed verdict in favor of Guyton was manifestly erroneous.

CONCLUSION
Accordingly, for the reasons stated, we affirm the judgment of the trial court.
AFFIRMED.